## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOHN G. HOUSEL, individually and as )<br>Special Administrator of the )<br>Estate of Brenda Shields, deceased, )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br>MERCY HEALTH SYSTEM OF KANSAS, )<br>INC., AND GREGORY H. MEARS, D.O., )<br> )<br>Defendants. )<br>_____ ) | Case No. 07-1112-JTM |

## MEMORANDUM AND ORDER

This matter is before the court on plaintiff's motion to compel both defendants to produce records requested in his second request for the production of documents (Doc. 75). Defendants separately oppose the motion. For the reasons set forth below, plaintiff's motion shall be GRANTED IN PART and DENIED IN PART.

### Background

This lawsuit arises from the treatment provided by Dr. Mears and Mercy Hospital to Brenda Shields. Highly summarized, plaintiff alleges that Shields, who had no health insurance, appeared at Mercy's emergency room with abnormal vital signs on April 23, 2005. Dr. Mears examined and discharged her that same day. On April 24, 2005, Shields was

found unresponsive at home and subsequently died.

Plaintiff asserts that defendants violated the Emergency Medical Treatment and Active Labor Act ("EMTALA") by discharging Shields without stabilizing her medical condition (Count 1). Plaintiff also alleges that defendants were negligent in the care and treatment provided to Shields (Count 2).

## Plaintiff's Motion to Compel

Plaintiff served the following request for records on both defendants:

> Any and all records that reference, record or reflect all emergency room visits for the five (5) years preceding April 23, 2005, along with an indication whether the visit resulted in a hospitalization or dismissal from the emergency room, and whether the patient was insured or uninsured.

Defendants declined to produce the records and objected, arguing that the request was (1) overly broad, (2) overly burdensome, and (3) not reasonably calculated to lead to the discovery of admissible evidence. Defendants also argued that production would violate the doctor-patient privilege of other patients. Plaintiff now moves to compel.

Mercy argues that it would be unduly burdensome for the hospital to gather and redact the medical records of individuals visiting the emergency room for a five year period. Specifically, Mercy represents that in excess of 20 persons visited its emergency room per day during 2005 and 2006 and that the total number of patients for any 12-month period is greater than 7,000. Mercy argues that considerable resources would be expended to print hundreds of pages of records and manually redact the patient's name from the records. In

-2-

addition to the substantial number of hours to gather the information, Mercy argues that the issue of whether a particular patient is admitted to the hospital is fact specific and will result in a "trial-within-a-trial" for every patient that plaintiff argues had (1) similar symptoms and (2) insurance coverage.  Mercy contends that, at most, plaintiff should be required to specify Ms. Shields' symptoms and that discovery could then be limited to patients presenting similar symptoms for a one year period.[1]

Dr. Mears, a sole proprietor, argues that the request for him to produce records is unduly burdensome because he would first have to see Mercy's five year list of patients in order to manually cross-check his billing records to determine whether a patient (1) was admitted or not and (2) had insurance.  He also asserts that he saw more than 50 patients per month at Mercy Hospital's emergency room during the five year period; thus, his record review and redaction efforts would involve more than 3,000 patients.[2]

Plaintiff counters that the scope of discovery is broad and that the requested documents are relevant to the issue of whether Mercy treats patients differently based on their ability to pay.  Moreover, plaintiff contends that the requested information is reasonably calculated to lead to the discovery of admissible evidence "as to whether there is a significant difference in the percentage of presenting emergency room patients that are hospitalized with

---

[1]

As plaintiff correctly points out, this proposal would not greatly reduce Mercy's burden because Mercy would still have to review every patient's record to see whether the symptoms were similar to those exhibited by Ms. Shields.

[2]

Dr. Mears was one of a number of doctors providing emergency room services.

insurance, and those who are released and have no insurance." Doc. 86, p. 2. [3]

Assuming for the moment that plaintiff's request is relevant, plaintiff's response fails to address in a meaningful manner the volume and burdensome nature of his discovery request.[4] Plaintiff's requested five year period involves an estimated 35,000 patient visits to Mercy's emergency room. The records are not retained in a manner that permits computer sorting and redacting; therefore, Mercy would be required to manually review and redact each record before production. Under the circumstances, the court agrees that the volume of requested patient records is unduly burdensome.[5] One year is a reasonable period of time

---

[3]　　Conceding there is "some burden" in the production of patient records, plaintiff expressed a "willingness to discuss sharing in or providing assistance in the retrieval and review process" in his reply brief. Doc. 68, p. 6. The issue of sharing the costs of retrieval should have been discussed during the meet and confer process before this motion was filed. Plaintiff's vague offer in his reply brief "to discuss" sharing the costs is of no assistance to the court in resolving the motion.

[4]　　Defendants dispute whether the information requested is relevant. However, the court is satisfied that information showing a pattern or history of discriminating against persons unable to pay is relevant, at least in the context of discovery, to plaintiff's EMTALA claim. Whether such information is ultimately admissible is an issue for the trial judge.

[5]　　Pursuant to Fed. R. Civ. P. 26(b)(2)(C), the court **must** limit the extent of discovery if it determines that (1) the discovery can be obtained from some other source that is more convenient, less burdensome, or less expensive or (2) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case.

to determine whether there is a pattern of admission based on the status of insurance.[6]  With respect to the one year period, the court will further limit discovery to a sampling of the estimated 7,000 patient visits.  The sampling shall be conducted on a random basis and limited to five percent of the records for patient visits to the emergency room.

Plaintiff's request to compel Dr. Mears to search his records shall be DENIED.  The requested five year period is excessive for the reasons explained above.  More importantly, the information concerning whether a patient had insurance and was admitted to Mercy can be found in Mercy's records.  Dr. Mears will not be ordered to gather, cross-reference, and redact information provided by Mercy.

**IT IS THEREFORE ORDERED** that plaintiff's motion to compel **(Doc. 75)** is **GRANTED IN PART and DENIED IN PART**, consistent with the rulings set forth above.  The deadline for the completion of the sampling described herein is **June 2nd, 2008.**

A motion for reconsideration of this order under D. Kan. Rule 7.3 is not encouraged.  The standards governing motions to reconsider are well established.  A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence.  Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or

---

[6]

Plaintiff also argues that five years is a reasonable period of time in order to determine whether Ms. Shields received treatment different from other patients with similar or like conditions.  This argument is rejected.  The period of time and volume of patients requested by plaintiff is simply too burdensome.

supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate.  <u>Comeau v. Rupp</u>, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by the court in <u>Comeau v. Rupp</u>.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 8th day of May 2008.

S/ Karen M. Humphreys
_____
KAREN M. HUMPHREYS
United States Magistrate Judge